UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| TINA DEGREE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 24-cv-10686-ADB |
| v. | * | |
| | * | |
| STEPHEN GENDREAU, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

## <u>MEMORANDUM AND ORDER</u>

BURROUGHS, D.J.

      Plaintiff Tina Degree ("Plaintiff") brings civil-rights and tort claims against members of

the Lowell Police Department ("LPD") and other employees of Lowell, Massachusetts, based on

her arrest at a March 20, 2021, protest outside the LPD's headquarters and her subsequent

prosecution.  Plaintiff initially sued three named LPD officers: Stephen Gendreau, Donald G.

Crawford, and James Michael Fay (the "Original Defendants").  [ECF No. 1].  Her Amended

Complaint added as defendants: five Lowell employees (Eileen Donoghue, Rachel Desilets,

Robin Smith, Kimberly Fairweather, and Meghan Ferreira (the "City Official Defendants")); and

seven more LPD officials (Kelly Richardson, Daniel Larocque, Mark LeBlanc, Joseph Murray,

Michael Kilmartin, and two John Does (with the Original Defendants and City Official

Defendants, "Defendants")).  [ECF No. 24 ("Amended Complaint" or "AC")].  Before the Court

are Rule 12(b)(6) motions to dismiss filed by the Original Defendants, [ECF No. 27], and the

City Official Defendants, [ECF No. 31].  For the following reasons, the Original Defendants'

motion is **GRANTED IN PART** and **DENIED IN PART** and the City Official Defendants'
motion is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background

The following facts are taken from Plaintiff's Amended Complaint.  For purposes of this
motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s]
all reasonable inferences therefrom in the pleader's favor."  Lawrence Gen. Hosp. v. Cont'l Cas.
Co., 90 F.4th 593, 598 (1st Cir. 2024) (quoting Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159,
162 (1st Cir. 2020)).

Plaintiff, a co-founder of an organization called Community Advocates for Justice and
Equality, [AC ¶ 16], who is Black, [id. ¶ 120], organized and led thirteen consecutive weeks of
protests outside the LPD headquarters, [id. ¶¶ 1–3].  The protests were sparked by the death of
25-year-old Moses Harris, Plaintiff's nephew, after an encounter with the LPD in December
2020.  [Id. ¶ 16].  Internal police communications indicate that Desilets, Smith, Fairweather, and
Ferreira, members of the LPD's Crime Analysis and Intelligence Unit, provided regular updates
on protest plans, social media posts, and the activities of Plaintiff to LPD leadership.  [Id. ¶ 26];
see also [ECF Nos. 24-1, 24-2, 24-3].  Larocque, LeBlanc, Murray, and Kilmartin were among
the LPD officials who were kept informed of Plaintiff's activities.  [AC ¶¶ 28–29].

According to the Amended Complaint, at approximately 2:00 p.m. on Saturday, March
20, 2021, Plaintiff and others were protesting on the public sidewalk outside the LPD
headquarters.  [AC ¶ 15].  Plaintiff "was casually and slowly pacing" among her fellow
protestors, while using a bullhorn.  [Id. ¶ 24].  In addition to the bullhorn, she was carrying a
water bottle, but she was not carrying a bag, and "[t]here were no objects visible within any of

the clothing she was wearing."  [Id. ¶ 23].

At 2:15 p.m., roughly a dozen officers "converged on the gathering," ordering the protestors to disperse.  [AC ¶ 19].  Three of the officers, Fay, Doe 1, and Doe 2 (the "Arresting Officers"), allegedly walked directly to Plaintiff, grabbed her arms and shoulders, forced her hands behind her back, and handcuffed her.  [Id. ¶¶ 9, 20, 22].  According to the Amended Complaint, the officers passed dozens of other protestors on their way to Plaintiff, although she was engaging in identical conduct to those around her.  [Id. ¶¶ 20–21].  The only two individuals arrested were people of color, though most of the protestors in attendance were white.  [Id. ¶ 21].  After placing her in handcuffs, the officers escorted Plaintiff into the LPD headquarters for booking, where she was charged with disorderly conduct, carrying a dangerous weapon, and vandalizing property.  [Id. ¶¶ 22, 25].  Crawford and Fay allegedly "drafted, approved, and submitted with an application for a criminal complaint an arrest report claiming [Plaintiff] had committed [the] three criminal offenses."  [Id. ¶ 11]; see also [ECF No. 27-2 (arrest report)].

After Plaintiff's arrest, a member of the City of Lowell Mayor's Office posted her bail, and Crawford, in his capacity as Vice President of the Lowell Police Superior Officers Association, sent an email to Donoghue, Lowell's City Manager, stating that the entire LPD was "disgusted" that one of the town's elected officials posted the bail, that this sent a "terrible message," and that "these officials chose criminals over the men and women of the Lowell Police department."  [AC ¶¶ 14, 39]; see also [ECF No. 24-3 at 14].  Crawford forwarded this email to Richardson, the LPD's Chief of Police, who responded, "Nice job, this is not over by any means."  [Id. ¶¶ 28, 40].

Two days after her arrest, on March 22, 2021, Plaintiff was arraigned in Lowell District Court, where the charge of vandalizing property was dismissed, but the other charges remained

pending.  [AC ¶ 38].  Plaintiff made several court appearances over the next year and a half while defending against the pending disorderly-conduct and dangerous-weapon charges.  [Id. ¶ 41].  After a two-day trial in early August 2022, at which Fay and Gendreau testified for the prosecution, a jury found Plaintiff not guilty of both charges.  [Id. ¶¶ 42–43].

### B.    Procedural History

Plaintiff filed her initial complaint in this action on March 19, 2024, against the Original Defendants and ten other John Doe defendants.  [ECF No. 1].  The Original Defendants filed motions to dismiss the complaint for improper service and for failure to state a claim.  [ECF Nos. 13, 15].  On October 4, 2024, Plaintiff filed an opposition to both motions, [ECF No. 19], to which the Original Defendants replied on October 16, 2024, [ECF No. 22].

On June 5, 2025, the Court granted the Original Defendants' motions to dismiss with leave to amend, finding that Plaintiff's initial complaint did not sufficiently allege the Original Defendants' roles in Plaintiff's arrest and was conclusory as to the unnamed John Doe defendants.  [ECF No. 23].  It also noted that the Original Defendants had not been properly served, but, in light of its decision on the merits, declined to consider whether there was good cause to extend the deadline to effectuate service.  [Id.].

Plaintiff filed the operative Amended Complaint on June 16, 2025, asserting claims against the Original Defendants, the City Official Defendants, and Richardson, Larocque, LeBlanc, Murray, Kilmartin, and two John Doe defendants.  [ECF No. 24].  On June 18, 2025, the Court ordered the Original Defendants to respond to the Amended Complaint by July 9, 2025, reminding Plaintiff of her obligation to serve the new defendants in accordance with Federal Rule of Civil Procedure 4.  [ECF No. 26].

On July 8, 2025, the Original Defendants moved to dismiss the Amended Complaint for failure to state a claim. [ECF No. 27]. On July 11, 2025, the City Official Defendants filed waivers of service, [ECF No. 30], and similarly moved to dismiss for failure to state a claim, [ECF No. 31]. After the Court extended Plaintiff's response deadlines, [ECF No. 34], Plaintiff opposed both motions on August 10, 2025, [ECF No. 35].

On October 7, 2025, the Court ordered Plaintiff to show proof that all new defendants who had not waived service had been properly served or to show cause why her claims against them should not be dismissed. [ECF No. 36]. Plaintiff subsequently filed waivers of service for Kilmartin and LeBlanc. [ECF Nos. 37, 38]. On November 20, 2025, however, the parties stipulated to the dismissal of Kilmartin and LeBlanc pursuant to Rule 41(a)(1)(A)(ii). [ECF No. 44].

On October 21, 2025, Plaintiff moved for an extension of time to serve Murray and Richardson, noting in her motion that Larocque was deceased, [ECF No. 39], and for leave to conduct limited pre-service discovery, [ECF No. 40]. On October 22, 2025, the Court extended the time to serve Murray and Richardson until November 14, 2025, but denied Plaintiff's request for pre-service discovery. [ECF No. 41]. Plaintiff did not file proofs of service for Murray, Richardson, or Larocque. Accordingly, on December 15, 2025, the Court dismissed Plaintiff's claims against Murray, Richardson, and Larocque for failure to effectuate timely service under Rule 4(m). [ECF No. 45].

## II.    LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc.,

732 F.3d 77, 80 (1st Cir. 2013) (quoting <u>Santiago v. Puerto Rico</u>, 655 F.3d 61, 72 (1st Cir. 2011)). A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Maddox</u>, 732 F.3d at 80 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Instead, "the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" <u>Maddox</u>, 732 F.3d at 80 (quoting <u>Twombly</u>, 550 U.S. at 570).

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." <u>Grajales v. P.R. Ports Auth.</u>, 682 F.3d 40, 44–45 (1st Cir. 2012) (citing <u>Iqbal</u>, 556 U.S. at 678). "The plausibility standard invites a two-step pavane." <u>Maddox</u>, 732 F.3d at 80 (citation omitted). First, courts "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." <u>Id.</u> (quoting <u>Morales-Cruz v. Univ. of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Morales-Cruz</u>, 676 F.3d at 224). "Conducting a plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." <u>Hernandez-Cuevas v. Taylor</u>, 723 F.3d 91, 103 (1st Cir. 2013) (quoting <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 14 (1st Cir. 2011)).

## III.    DISCUSSION

The Amended Complaint contains twenty-one counts: for violations of the Fourth Amendment to the U.S. Constitution and Article XIV of the Massachusetts Declaration of Rights (Counts 1 and 2); retaliation (Counts 3 and 4); false arrest and false imprisonment (Counts 5–10); malicious prosecution (Counts 11–13); abuse of process (Counts 14–16); assault and battery (Count 17); civil-rights conspiracy (Count 18); common-law conspiracy (Counts 19 and 20); and for violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution (Count 21).  [AC ¶¶ 44–126].

### A.    Fourth Amendment and Article XIV Violations (Counts 1 and 2)

In Counts 1 and 2 of the Amended Complaint, Plaintiff alleges that the Arresting Officers "denied her rights" as guaranteed under the Fourth Amendment to the U.S. Constitution and Article XIV of the Massachusetts Declaration of Rights "[a]s a result of [their] actions."  [AC ¶¶ 46, 49].  The conclusory nature of these claims, which do not specify which conduct allegedly violated Plaintiff's rights or how, could justify their dismissal.  See, e.g., Cline v. Burke, 682 F. Supp. 3d 125, 133 (D. Mass. 2023) (dismissing Fourth Amendment claim "mak[ing] a conclusory declaration: 'Warrant without probable cause'" because complaint "fail[ed] to provide further allegations or identify which of the 19 defendants violated plaintiff's Fourth Amendment rights, or how those rights were violated"), aff'd, No. 23-1680, 2024 WL 5412394 (1st Cir. Oct. 16, 2024).  Reading Counts 1 and 2 in light of the remainder of the Amended Complaint, however, the Court assumes that they are based on the alleged absence of probable cause for Plaintiff's arrest.[1]  See [ECF No. 35 at 8–9].

---

[1] To the extent Plaintiff intended these claims to be excessive-force claims, she has failed to state a claim, as further discussed infra in Section III.F.  See, e.g., Peña-Borrero v. Estremeda, 365 F.3d 7, 12 (1st Cir. 2004) (affirming dismissal of § 1983 excessive-force claim where "the

Beginning with Plaintiff's § 1983 claim (Count 1), the Fourth Amendment "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person," Graham v. Connor, 490 U.S. 386, 394 (1989) (quoting U.S. Const. amend. IV), and demands that an arrest be supported by probable cause, Beck v. Ohio, 379 U.S. 89, 91 (1964).[2] Thus, to state a claim under § 1983 for false arrest, Plaintiff must allege that the Arresting Officers lacked probable cause to believe that Plaintiff had committed or was committing a crime.  Jordan v. Town of Waldoboro, 943 F.3d 532, 545 (1st Cir. 2019), abrogated on other grounds by Thompson v. Clark, 596 U.S. 36 (2022).  "The probable cause determination turns on 'whether . . . the facts and circumstances within [the police officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that' a crime was committed or was being committed."  Deaton v. Town of Barrington, 100 F.4th 348, 356 (1st Cir. 2024) (quoting Beck, 379 U.S. at 91); see also Charron v. County of York, 49 F.4th 608, 616 (1st Cir. 2022) (noting that the probable-cause inquiry "is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest" (quoting United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005))).  "To determine whether an officer had probable cause for an arrest, '[courts] examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.'"  District of Columbia v. Wesby, 583 U.S. 48, 56–57 (2018) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  Probable cause is a "fluid

---

allegations demonstrate no more than the 'degree of physical coercion' typically attendant to an arrest" (quoting Graham v. Connor, 490 U.S. 386, 396 (1989))).

[2] The Fourth Amendment applies to state and municipal actors through the Due Process Clause of the Fourteenth Amendment.  Graham, 490 U.S. at 394–95; Mapp v. Ohio, 367 U.S. 643, 655 (1961).

concept," Deaton, 100 F.4th at 356 (quoting Karamanoglu v. Town of Yarmouth, 15 F.4th 82, 87 (1st Cir. 2021)), requiring "more than 'bare suspicion', but less tha[n] what would be needed to 'justify . . . conviction,'" Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003).  At bottom, "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt." Pringle, 540 U.S. at 371.

Here, the Court finds that Plaintiff has sufficiently alleged that the Arresting Officers lacked probable cause to arrest her.  Plaintiff was initially charged with disorderly conduct, vandalizing property, and carrying a dangerous weapon.  [AC ¶ 25].  She alleges, however, that, at the time of arrest, she was "casually and slowly pacing" and "using her bullhorn" outside the LPD headquarters, [id. ¶ 24]; she also alleges that she did not cause any property damage and that no objects were visible within any of the clothing she was wearing, [id. ¶ 23–24].  These allegations, while perhaps somewhat thin, sufficiently establish, at this stage in the litigation, that the Arresting Officers lacked probable cause to arrest her.

The Original Defendants contend that the arrest report drafted by Defendant Fay, which they attach to their motion to dismiss, [ECF No. 27-2], "shows that [Plaintiff's] arrest was supported by probable cause," [ECF No. 28 at 7].  According to the report, Plaintiff "chose to intentionally lead protestors and block the driveway" to the police station, refusing to move when officers asked her to and "us[ing] her bull horn to yell at them, at close range, in their faces"; she also reportedly "incit[ed] the other protesters who immediately became aggressive with officers."  [ECF No. 27-2 at 3].[3]  These statements, if accurate, would certainly undermine

_____

[3] While the Court "ordinarily may only consider facts alleged in the complaint and exhibits attached thereto," Freeman v. Town of Hudson, 714 F.3d 29, 35 (1st Cir. 2013), it may also consider certain extrinsic documents, including "documents the authenticity of which [is] not disputed by the parties . . . official public records; . . . documents central to plaintiffs' claim . . . [and] . . . documents sufficiently referred to in the complaint," id. at

Plaintiff's allegations.  At this stage in the proceedings, however, the Court must view the facts

in the light most favorable to Plaintiff, and "this is neither the time nor the place to

resolve . . . factual disputes between the parties."  Haley v. City of Bos., 657 F.3d 39, 52 (1st Cir.

2011).  Thus, the contrary factual narrative presented in the arrest report does not defeat

Plaintiff's Fourth Amendment claim.  Accordingly, the Original Defendants' motion to dismiss

is **<u>DENIED</u>** as to Count 1.

  Plaintiff's MCRA claim (Count 2), however, fails.  The MCRA provides a cause of

action to any person "whose exercise or enjoyment of rights secured by" the Constitution or laws

of the United States or Massachusetts "has been interfered with, or attempted to be interfered

with."  Mass. Gen. Laws ch. 12 § 11I.  The substantive protections provided by Article XIV of

the Massachusetts Declaration of Rights in this context mirror those provided by the Fourth

Amendment to the U.S. Constitution.  See, e.g., Ramhit v. Luu, No. 24-cv-12420, 2025 WL

2608046, at *4 (D. Mass. Sept. 9, 2025); Nuon v. City of Lowell, 768 F. Supp. 2d 323, 330 (D.

Mass. 2011).  The MCRA, however, while largely "co-extensive with § 1983," differs from the

federal statute "on two points."  3137, LLC v. Town of Harwich, 126 F.4th 1, 13 (1st Cir. 2025).

It "(1) 'does not require any state action' and (2) 'requires a violation by threats, intimidation, or

coercion.'"  Id. (quoting Kelley v. LaForce, 288 F.3d 1, 10 (1st Cir. 2002)); see also Jakuttis v.

Town of Dracut, 656 F. Supp. 3d 302, 331 (D. Mass. 2023) (describing the MCRA as "broader

substantively insofar as it reaches private conduct" and "narrower substantively insofar as it only

reaches constitutional deprivation caused by threats, intimidation, or coercion."), aff'd in part,

---

36 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Plaintiff's Amended Complaint
refers repeatedly to, and quotes from, the arrest report, see [AC ¶¶ 11, 25, 30–37], and Plaintiff
concedes that "[t]he Amended Complaint incorporates the arrest report and related
communications," [ECF No. 35 at 10].

remanded in part, 95 F.4th 22 (1st Cir. 2024).  Thus, to state a claim under the MCRA, a plaintiff must allege "threats, coercion, or intimidation in addition to a constitutional violation."  Santiago v. Keyes, 890 F. Supp. 2d 149, 155 (D. Mass. 2012).  In the Fourth Amendment context, this means that "the fact of a Fourth Amendment violation, standing alone, does not give rise to a claim under the MCRA."  Ciolino v. Eastman, 128 F. Supp. 3d 366, 380 (D. Mass. 2015) (characterizing this as the "majority" view); see also Brown v. Butler, No. 3:17-cv-30030, 2017 WL 9673712, at *13 n.12 (D. Mass. Dec. 22, 2017) (collecting decisions).  "Rather, MCRA liability arises only when '(1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do'"  Ciolino, 128 F. Supp. 3d at 380 (quoting Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009)); see also Eck v. Neal, No. 1:14-cv-13693, 2017 WL 4364171, at *7 (D. Mass. Sept. 29, 2017) ("To prove a violation of the MCRA . . . [Plaintiff] must demonstrate that Defendants used the arrest or the threat of arrest to prevent him from exercising his free speech rights in the future, not merely to retaliate against him for previous statements.").

"[A] 'threat' consists of 'the intentional exertion of pressure to make another fearful or apprehensive of injury or harm'; 'intimidation' involves 'putting in fear for the purpose of compelling or deterring conduct'; and 'coercion' is 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.'"  Glovsky v. Roche Bros. Supermarkets, 17 N.E.3d 1026, 1035 (Mass. 2014) (quoting Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass. 2006)).  "Whether conduct amounts to threats, intimidation, or coercion is assessed under an objective, 'reasonable person' standard."  3137, LLC, 126 F.4th at 13 (quoting Salmon v. Lang, 57 F.4th 296, 316–17 (1st Cir. 2022)); see also Daly v. Mason, 752 F. Supp. 3d 346, 365 (D. Mass. 2024) ("Whether a

defendant's conduct 'constitutes such threats, intimidation, or coercion' depends on whether a reasonable person would feel threatened, intimidated, or coerced." (quoting Glovksy, 17 N.E.3d at 1035)).

Here, the Amended Complaint alleges that the officers arrested Plaintiff "to send a message" and to "chill her exercise of her First Amendment rights" because they "had grown increasingly frustrated after thirteen consecutive weeks of peaceful demonstrations." [AC ¶¶ 17–18, 34]. Without more, however, these conclusory allegations do not plausibly suggest that the Arresting Officers engaged in threats, intimidation, or coercion. See Salmon, 57 F.4th at 317. The Court is also skeptical that Plaintiff's allegations of what is essentially backward-looking retaliation can give rise to MCRA liability, in the absence of specific allegations suggesting that the officers arrested her to prevent her from further exercise of her First Amendment rights. See Eck, 2017 WL 4364171, at *7; Amirault v. City of Malden, 241 F. Supp. 3d 288, 304 (D. Mass. 2017); Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 76–77 (D. Mass. 2012). Accordingly, the Original Defendants' motion to dismiss Count 2 is **<u>GRANTED</u>**.

### B.    Retaliation (Counts 3 and 4)

In Counts 3 and 4 of the Amended Complaint, Plaintiff alleges that the Defendants retaliated against her for exercising her rights under the First Amendment of the U.S. Constitution and Article XVI of the Massachusetts Declaration of Rights by "stopping, detaining, arresting, charging, and prosecuting her." [AC ¶¶ 54, 61].

The First Amendment to the U.S. Constitution and Article XVI of the Massachusetts Declaration of Rights protect the freedom of speech.[4] U.S. Const. amend. I; Mass. Const. pt. 1,

---

[4] The First Amendment applies to state and municipal actors through the Due Process Clause of the Fourteenth Amendment. Gitlow v. New York, 268 U.S. 652, 666 (1925); De Jonge v. Oregon, 299 U.S. 353, 364 (1937).

art. 16. Retaliation "is not expressly referred to in the [U.S.] Constitution," but it "is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."[5] Powell v. Alexander, 391 F.3d 1, 16–17 (1st Cir. 2004) (quoting ACLU of Md., Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993)).

As a threshold issue, a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest," with a "narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." Nieves v. Bartlett, 587 U.S. 391, 402, 406 (2019); see also Gonzalez v. Trevino, 602 U.S. 653, 658 (2024) (discussing Nieves exception and rejecting requirement that plaintiffs produce evidence of "virtually identical and identifiable comparators"). The same is true for plaintiffs seeking to bring a retaliatory-prosecution action, who must "plead and show the absence of probable cause for pressing the underlying criminal charges." Hartman v. Moore, 547 U.S. 250, 257 (2006).

In addition to satisfying these threshold requirements, the plaintiff must also meet the typical pleading requirements of a First Amendment retaliation claim in that she must "plead that [s]he engaged in First Amendment-protected conduct, that [s]he suffered an adverse action, and that h[er] protected conduct played a 'substantial or motivating' part in the adverse action." Berge v. Sch. Comm. of Gloucester, 107 F.4th 33, 37 n.4 (1st Cir. 2024) (quoting Gattineri v. Town of Lynnfield, 58 F.4th 512, 514 (1st Cir. 2023)); see also D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012) (describing it as plaintiff's burden to prove "that (1) he

---

[5] The parties have not directed the Court to any authority suggesting that the analysis of MCRA claims based on Article XIV violations differs from that for § 1983 claims based on First Amendment violations, and the Court assumes the analysis is the same. See Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 226 (D. Mass. 2015).

or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action").  To satisfy the causation element, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must <u>cause</u> the injury.  Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  <u>Nieves</u>, 587 U.S. at 398–99. The Court gauges the liability of each defendant based on their own involvement in each alleged constitutional violation.  <u>Rogan v. Menino</u>, 175 F.3d 75, 77 (1st Cir. 1999); <u>Lyons v. Nat'l Car Rental Sys., Inc.</u>, 30 F.3d 240, 246 (1st Cir. 1994); <u>Martinez v. Wolferseder</u>, 997 F. Supp. 192, 195 (D. Mass. 1998).

Here, Plaintiff plausibly alleges that she was arrested without probable cause, as discussed <u>supra</u>, and that she was prosecuted without probable cause when Defendants Crawford and Fay applied for a criminal complaint against her.  <u>See</u> <u>Boyle v. Barnstable Police Dep't</u>, 818 F. Supp. 2d 284, 311 (D. Mass. 2011) ("The probable cause determination is made at the time [the officers] filed the applications for the criminal complaints."); <u>see also</u> <u>Vigeant v. United States</u>, 462 F. Supp. 2d 221, 228 n.9 (D.R.I. 2006) (noting that because plaintiff was "charged with the crime for which he was arrested" there was no difference between the analysis of probable cause for arrest and probable cause to press charges), <u>aff'd</u>, 245 F. App'x 23 (1st Cir. 2007).

The Original Defendants counter that there was probable cause to prosecute Plaintiff, as shown by the fact that the court overseeing the criminal case against Plaintiff denied two oral

motions for a required finding of not guilty.  [ECF No. 28 at 6–7]; see also [ECF No. 27-1 at 5].[6]

Massachusetts Rule of Criminal Procedure 25(a)—which functions like its federal counterpart,

Federal Rule of Criminal Procedure 29, Smith v. Massachusetts, 543 U.S. 462, 468 (2005)

(noting that "Massachusetts patterned its Rule 25 on Federal Rule 29")—directs the trial judge to

enter a finding of not guilty "if the evidence is insufficient as a matter of law to sustain a

conviction on the charge."  Because the state court found that there was sufficient evidence for

the jury to conclude beyond a reasonable doubt that Plaintiff was guilty, the Original Defendants

argue, it "necessarily found that there was probable cause supporting the disorderly conduct and

carrying a dangerous weapon charges."  [ECF No. 28 at 7].

The Court disagrees that the state court's rulings establish that there was probable cause

to prosecute Plaintiff.  For purposes of Plaintiff's retaliatory-prosecution claims, the issue is

whether probable cause existed at the time Crawford and Fay initiated criminal proceedings

against her, not whether the prosecution presented sufficient evidence at trial to support a

conviction.  Hartman, 547 U.S. at 257; Boyle, 818 F. Supp. 2d at 311.  The Original Defendants

argue that Plaintiff's ultimate acquittal does not prove that there was no probable cause to charge

and prosecute her.  [ECF No. 28 at 7].  The flipside of this argument is that the trial court's

denial of a motion for a required finding of not guilty does not conclusively establish probable

cause to prosecute Plaintiff as a matter of law. See, e.g., Blue v. Lopez, 901 F.3d 1352, 1359

(11th Cir. 2018) (reversing grant of summary judgment to defendant on § 1983 malicious-

prosecution claim and rejecting state-law rule that "trial court's denial of a motion for directed

verdict in an earlier criminal case served as a binding determination for the existence of probable

---

[6] Although the state court's decisions are not mentioned in the Amended Complaint, they are
public records that the Court may consider on a motion to dismiss.  See Freeman, 714 F.3d at 37.

cause in a later civil action for malicious prosecution"); Crowley v. Anderson County, No. 3:17-cv-00169, 2021 WL 5304194, at *9 (E.D. Tenn. Apr. 21, 2021) ("[T]he denial of a motion for judgment of acquittal is probative—though not preclusive—of probable cause in a malicious-prosecution case."); Briner v. City of Ontario, No. 1:07-cv-0129, 2007 WL 2891343, at *5 (N.D. Ohio Sept. 28, 2007) ("It is true that the denial of the Rule 29 motion for acquittal is evidence that there was probable cause for [plaintiff's] arrest. . . . It is not, as defendants would suggest, conclusive on the subject."); cf. In re Relafen Antitrust Litig., 346 F. Supp. 2d 349, 362 (D. Mass. 2004) (rejecting argument that denial of summary judgment established probable cause to initiate civil case).  Thus, the state trial court's rulings do not defeat Plaintiff's retaliation claims as a matter of law.

Turning to the remaining elements of retaliation, Plaintiff has plausibly alleged that she engaged in First Amendment–protected conduct (protesting outside the police station) and that she suffered an adverse action (her arrest and prosecution), [AC ¶¶ 15, 20, 24], though the Amended Complaint still does not clearly identify the roles of each Defendant in that adverse action.  Specifically, the Amended Complaint does not plausibly allege that the City Official Defendants personally participated in either Plaintiff's arrest or her prosecution.  As to Desilets, Smith, Fairweather, and Ferreira, Plaintiff alleges only that they had been "monitoring the weekly protests and specifically tracking [Plaintiff's] activities . . . and provided regular updates on protest plans, social media posting, and [Plaintiff's] role to LPD leadership."  [Id. ¶ 26].  Donoghue, meanwhile, features in the Amended Complaint only as the recipient of two emails that do not suggest any personal involvement in the decision to arrest or charge Plaintiff.  [Id. ¶¶ 29, 39].  Plaintiff also has not alleged that Gendreau, about whom she alleges only that he testified for the prosecution at her trial, [id. ¶ 43], was sufficiently involved in initiating criminal

proceedings against her to be liable for retaliatory prosecution.  Thus, Plaintiff has not stated retaliation claims against the City Official Defendants or Gendreau.  Rogan, 175 F.3d at 77.

As to the remaining defendants—Crawford, Fay, and the unnamed officers who participated in Plaintiff's arrest, Doe 1 and Doe 2—Plaintiff has plausibly alleged causation, if only barely.  In dismissing Plaintiff's initial complaint, the Court noted that Plaintiff's allegations that Defendants arrested and charged her and others in order to chill their exercise of their right to free speech amounted to little more than labels and conclusions.  [ECF No. 23].  The Amended Complaint does not add much to these allegations, relying primarily on statements in the arrest report to argue that Crawford and Fay "chose to arrest and charge [Plaintiff] in order to intimidate and silence her."  [AC ¶¶ 30–36].  Plaintiff does allege, however, that the Arresting Officers singled her out, "walk[ing] directly to" her, [id. ¶ 20], and that they "knew who [she] was," [id. ¶ 21], that is, "the organizer, leader, and most vocal speaker" of recurring anti-police protests, [ECF No. 27-2 at 3], and "intended to arrest her specifically," [AC ¶ 21].  See Weiss v. Lavallee, No. 01-cv-40177, 2005 WL 8176485, at *17 (D. Mass. Oct. 7, 2005) ("The fact that an adverse action closely followed First Amendment activity may create a reasonable inference that the defendant acted with a retaliatory motive." (quoting Ferranti v. Moran, 618 F.2d 888, 892 (1st Cir. 1980))).  The Amended Complaint also refers to an email that Crawford—who, with Fay, allegedly applied for a criminal complaint against Plaintiff, [AC ¶ 11]—sent to Donoghue, Lowell's City Manager, in which he "express[ed] dismay that bail was posted for [Plaintiff]," [id. ¶ 39], and frustration with the City's lack of support for the LPD in the face of "anti-police sentiment," [ECF No. 24 at 9], and to the response of Richardson, the LPD's Chief of Police, to that email, in which Richardson stated that "this is not over by any means," [id.].  Moreover, as discussed supra, Plaintiff has plausibly alleged that her arrest and prosecution were not supported

by probable cause.  Thus, viewed in the light most favorable to Plaintiff, the Amended

Complaint and the other materials submitted by the parties permit the reasonable inference that

Defendants Crawford, Fay, and Does 1 and 2 would not have arrested and prosecuted Plaintiff

absent a retaliatory motive.  Accordingly, the Original Defendants' motion to dismiss Count 3 is

**GRANTED IN PART** and **DENIED IN PART** in that Plaintiff's § 1983 retaliation claim may

proceed against Crawford and Fay, but not against Gendreau.  The City Official Defendants'

motion to dismiss Count 3 is **GRANTED**.

As discussed <u>supra</u>, Plaintiff has failed to allege that any of the Defendants engaged in

threats, intimidation, or coercion, as required to state a claim under the MCRA.  Accordingly, the

Original Defendants' and City Official Defendants' motions to dismiss Count 4 are **GRANTED**.

### C.    False Arrest and False Imprisonment (Counts 5–10)

Plaintiff asserts claims for false imprisonment and false arrest under § 1983 (Counts 6

and 9), the MCRA (Counts 7 and 10), and the common law (Counts 5 and 8) against the

Arresting Officers.  [AC ¶¶ 66–84].

The torts of "[f]alse arrest and false imprisonment overlap; the former is a species of the

latter."  <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007).  Accordingly, when a complaint asserts

distinct § 1983 claims for false arrest and false imprisonment, it is "most appropriate to view the

allegations as stating a single claim for violation of [plaintiff's] Fourth Amendment right to be

free from an unreasonable seizure."  <u>Peña-Borrero v. Estremeda</u>, 365 F.3d 7, 13 n.8 (1st Cir.

2004).

Similarly, the common law tort of "[f]alse arrest is a species of the tort of false

imprisonment," <u>Nuon</u>, 768 F. Supp. 2d at 336, and the two torts have the same elements under

Massachusetts law: "(1) intentional and (2) unjustified (3) confinement of a person, (4) directly

or indirectly (5) of which the person confined is conscious or is harmed by such confinement." Abubardar v. Gross, 542 F. Supp. 3d 69, 77 (D. Mass. 2021) (quoting Bertram v. Viglas, No. 19-cv-11298, 2020 WL 1892187, at *9 (D. Mass. Apr. 16, 2020)) (false arrest); Sietins v. Joseph, 238 F. Supp. 2d 366, 381 (D. Mass. 2003) (quoting Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 55 (D. Mass. 2000)) (false imprisonment).  Although probable cause is not an element of these torts, it is required for an arrest to be lawful.  Abubardar, 542 F. Supp. 3d at 77; Sietins, 238 F. Supp. 2d at 381.

Here, Plaintiff's § 1983 and common-law false-arrest and false-imprisonment claims survive dismissal for the same reasons as her Fourth Amendment claim, that is, that Plaintiff has plausibly alleged that her arrest was not supported by probable cause.  Her MCRA claims fail for the same reasons as her other MCRA claims, that is, because she has not plausibly alleged threats, intimidation, or coercion by any defendant.  Accordingly, the Original Defendants' motion to dismiss Counts 7 and 10 is **GRANTED** and their motion to dismiss Counts 5, 6, 8, and 9 is **DENIED**.

### D.    Malicious Prosecution (Counts 11–13)

Plaintiff asserts malicious prosecution claims against the Original Defendants under § 1983 (Count 12), the MCRA (Count 13), and the common law (Count 11), alleging that they "commenced and continued a criminal proceeding against [her]" without probable cause.  [AC ¶¶ 87, 92, 97].

To succeed on a § 1983 claim for malicious prosecution, a plaintiff must establish that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th

Cir. 2012)).  In other words, "a plaintiff seeking to sustain a malicious prosecution claim under § 1983 must do more than merely satisfy the elements of the common law tort of malicious prosecution," Watson v. Mita, 396 F. Supp. 3d 220, 224 (D. Mass. 2019); she must additionally "show a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure," id. (quoting Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010)).  "Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)." Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001); see also Hernandez-Cuevas, 723 F.3d at 100 n.9 ("The moment a defendant becomes held pursuant to legal process differs depending on whether or not the defendant was arrested pursuant to a warrant.").  Where a plaintiff is "arrested without a warrant . . . their arrest[]—which antedated any legal process—cannot be part of the Fourth Amendment seizure upon which they base their section 1983 claims." Nieves, 241 F.3d at 54. In such cases, the plaintiff "is detained without process until, 'for example, he is bound over by a magistrate or arraigned on charges.'" Hernandez-Cuevas, 723 F.3d at 100 n.9 (quoting Wallace, 549 U.S. at 389).  The plaintiff must then show "some post-arraignment deprivation of liberty that amounts to a Fourth Amendment seizure," such as being "detained after the initiation of the criminal charge, forced to post a pecuniary bond, subjected to travel restrictions, or otherwise burdened with any significant deprivation of liberty." Harrington, 610 F.3d at 32.

Here, although Plaintiff has plausibly alleged that her arrest and prosecution were unsupported by probable cause, her § 1983 malicious-prosecution claim fails because she has not plausibly alleged a Fourth Amendment seizure pursuant to legal process.  Plaintiff was arrested without a warrant, [AC ¶¶ 19–22], meaning that her initial detention was not pursuant to legal

20

process. Hernandez-Cuevas, 723 F.3d at 100 n.9. She was released on bail after her arrest, [AC ¶¶ 38–39], and, after being arraigned (and thus subjected to legal process), she was released on personal recognizance, [ECF No. 27-1 at 3], meaning that she was not "detained after the initiation of the criminal charge," either, Harrington, 610 F.3d at 32. Plaintiff has not alleged that she was subject to any other post-arraignment deprivation of liberty that could amount to a Fourth Amendment seizure. Because Plaintiff has not alleged a Fourth Amendment seizure pursuant to legal process, the Original Defendants' motion to dismiss Plaintiff's § 1983 and MCRA malicious-prosecution claims (Counts 12 and 13) is **GRANTED**.

Plaintiff's common-law malicious-prosecution claim (Count 11), however, largely survives dismissal. "To make out a claim for malicious prosecution, a plaintiff must prove: '(1) the institution of criminal process against the plaintiff with malice; and (2) without probable cause; and (3) the termination of the criminal proceeding in favor of the plaintiff.'" Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d 552, 561 (Mass. 2002) (quoting J.R. Nolan & L.J. Sartorio, Tort Law § 77, at 88 (2d ed. 1989)). The Original Defendants primarily contest the second element, probable cause. [ECF No. 28 at 13–14]. As discussed supra, however, Plaintiff has plausibly alleged the absence of probable cause to prosecute her. Plaintiff has also plausibly alleged that the criminal proceedings terminated in her favor. [AC ¶ 42].

With respect to the first element, Plaintiff's allegations are sufficient as to Crawford and Fay, who "drafted, approved, and submitted" the application for a criminal complaint against her. [AC ¶ 11]; see Damon v. Hukowicz, 964 F. Supp. 2d 120, 137 (D. Mass. 2013) ("[F]iling a criminal complaint constitutes the institution of criminal proceedings and, while such conduct is not always necessary for a claim of malicious prosecution, it is certainly sufficient."); Smith v. Egan, No. 24-cv-11794, 2025 WL 2777646, at *5 (D. Mass. Sept. 29, 2025) ("[F]or purposes of

a common law malicious prosecution claim, malice is defined as 'any wrong or unjustifiable motive' and may be inferred from the facts, including that the defendant effectuated a criminal prosecution despite knowing there was no probable cause to do so. (quoting <u>Campbell v. Casey</u>, 166 F. Supp. 3d 144, 153 (D. Mass. 2016))).

As discussed <u>supra</u>, however, Plaintiff's allegations against Gendreau are insufficient because they do not establish that he initiated or continued criminal process against her. His only involvement in the criminal proceedings against Plaintiff, according to the Amended Complaint, was his testimony for the prosecution at trial. [AC ¶¶ 10, 43]. Although "the Supreme Judicial Court has left open the possibility that an individual who did not . . . institute proceedings . . . may be liable for malicious prosecution for 'continuing' (or inducing another to continue) a prosecution after it becomes apparent that there is no probable cause," <u>Yacubian v. United States</u>, 952 F. Supp. 2d 334, 341 (D. Mass. 2013) (quoting <u>Limone v. United States</u>, 579 F.3d 79, 91 (1st Cir. 2009)), <u>aff'd</u>, 750 F.3d 100 (1st Cir. 2014); <u>accord</u> <u>Gutierrez</u>, 772 N.E.2d at 562, the mere fact that Gendreau testified at Plaintiff's trial does not create liability under a malicious-continuation theory. <u>See</u> <u>Limone</u>, 579 F.3d at 91 ("[T]he mere provision of false information cannot alone ground a malicious continuation finding. More is required, such as an insistence that the prosecution go forward even after it has become clear that probable cause is lacking."); Restatement (Second) of Torts § 655 cmt. c (A.L.I. 1977) ("It is not enough that [the defendant] appears as a witness against the accused . . . and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution."). Plaintiff has not alleged that Gendreau took active steps to encourage her continued prosecution, so she has not stated a common-law malicious-prosecution claim against him.

Accordingly, the Original Defendants' motion to dismiss Plaintiff's common-law malicious-prosecution claim (Count 11) is **GRANTED IN PART** and **DENIED IN PART** in that this claim may proceed against Crawford and Fay, but not Gendreau.

### E.    Abuse of Process (Counts 14–16)

Plaintiff asserts abuse-of-process claims against the Original Defendants under § 1983 (Count 15), the MCRA (Count 16), and the common law (Count 14), alleging they used "process for an ulterior or illegitimate purpose resulting in damage to [Plaintiff]."  [AC ¶¶ 101, 103, 105].

Plaintiff cannot bring abuse-of-process claims under § 1983 and the MCRA.  The First Circuit has held that "proof of abuse of process alone cannot support a finding of liability under § 1983," Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989), and this holding also disposes of Plaintiff's MCRA claim, see Tahoun v. Barrasso, No. 24-cv-12756, 2025 WL 2254449, at *7 (D. Mass. July 21, 2025); DeGree v. City of Lowell, No. 24-cv-12415, 2025 WL 2347548, at *10 n.11 (D. Mass. July 15, 2025), report and recommendation adopted, No. 24-cv-12415, 2025 WL 2347433 (D. Mass. Aug. 12, 2025).  Accordingly, the Original Defendants' motion to dismiss Counts 15 and 16 is **GRANTED**.

To state a claim for common-law abuse of process, Plaintiff must plausibly allege that "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." Gutierrez, 772 N.E.2d at 563 (Mass. 2002) (quoting Datacomm Interface, Inc. v. Computerworld, Inc., 489 N.E.2d 185, 195 (Mass. 1986)).  The Original Defendants focus on the second element, arguing that "the Amended Complaint includes no well-pled facts that would plausibly allege [Defendants] had an ulterior or illegitimate purpose."  [ECF No. 28 at 18].  The Court disagrees.  "[I]nclud[ing] false facts in [an] arrest report[]" may be evidence of an ulterior or illegitimate purpose.  Gutierrez, 772 N.E.2d at 563.  Here, Plaintiff has alleged that Crawford

and Fay prepared an arrest report "in order to intimidate and silence her," [AC ¶ 30], and that the report made several statements that lacked factual or evidentiary support, including that Plaintiff and other protesters had "disrupted traffic, blocked intersections, destroyed signs, and damaged barricades," [id. ¶ 32].  See Hutchins v. McKay, 285 F. Supp. 3d 420, 430 (D. Mass. 2018) (denying summary judgment on abuse-of-process claim where, "if a jury credited Plaintiff's testimony, it might well find that the police report was substantially exaggerated").  Courts have also recognized that the use of process in retaliation for protected First Amendment activity can satisfy the ulterior-and-illegitimate-purpose element.  See Weiss v. Lavallee, No. 01-cv-40177, 2006 WL 8458637, at *7 (D. Mass. Feb. 15, 2006).  As discussed supra, Plaintiff has plausibly alleged that Crawford and Fay used process to retaliate against her for engaging in activity protected by the First Amendment.  Thus, Plaintiff has plausibly alleged that Crawford and Fay used process for an ulterior and illegitimate purpose.

Plaintiff has not plausibly alleged, however, that Gendreau used process against her.  See Yacubian v. United States, 750 F.3d 100, 110 (1st Cir. 2014) (defining process as "causing papers to be issued by a court to bring a party or property within its jurisdiction" (quoting Vittands v. Sudduth, 730 N.E.2d 325, 332 n.9 (Mass. App. Ct. 2000))).  Plaintiff has alleged only that Gendreau offered testimony against her, which does not amount to a use of process for purposes of the tort.  Accordingly, the Original Defendants' motion to dismiss Plaintiff's common-law abuse-of-process claim (Count 14) is **GRANTED IN PART** and **DENIED IN PART** in that this claim may proceed against Crawford and Fay, but not Gendreau.

### F.    Assault and Battery (Count 17)

Plaintiff asserts a common-law assault and battery claim against the Arresting Officers, alleging that they intended and caused "harmful or offensive contact" with Plaintiff during her

24

arrest.  [AC ¶¶ 107, 108].  Under Massachusetts law, a plaintiff may maintain "assault and battery claims against police officers who use excessive force in conducting an arrest."  Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010).  "However, Massachusetts law also allows an officer to use reasonable force in conducting a lawful arrest: reasonable force is a valid defense to assault and battery."  Id. (citing Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991)).  Thus, to state a claim for assault and battery against an arresting police officer, a plaintiff must plausibly allege that the force that officer used was unreasonable.  See, e.g., Correia v. Town of Westport, No. 1:16-cv-12408, 2017 WL 3940931, at *10 (D. Mass. Sept. 7, 2017).

Here, Plaintiff has not stated a claim for assault and battery.  She alleges that, in the process of arresting her, the three officers "physically seized her by grabbing her arms and shoulders with their hands and physically forcing her hands behind her back."  [AC ¶ 22].  But "[i]t has long been recognized that 'the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  Dean, 924 F.2d at 368–69 (quoting Graham, 490 U.S. at 396).  Plaintiff has alleged only that the Arresting Officers used force against her, not that their use of force was unreasonable or excessive, and she has not pleaded any facts suggesting that the force used exceeded what was necessary to effect her arrest.  Accordingly, the Original Defendants' motion to dismiss Count 17 is **GRANTED**.

### G.    Civil Rights Conspiracy (Count 18)

Plaintiff alleges that the Defendants "conspired to arrest and charge [her] to chill her exercise of her First Amendment rights," [AC ¶ 34], in violation of 42 U.S.C § 1985(3), [id. ¶¶ 109–13].

42 U.S.C. § 1985 "confers a private right of action for injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any

person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" Nieves, 241 F.3d at 50 (quoting 42 U.S.C § 1985(3)). To state a claim under § 1985(3), a plaintiff must allege four elements:

> First, the plaintiff must allege a conspiracy; second, [s]he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, [s]he must identify an overt act in furtherance of the conspiracy; and finally, [s]he must show either injury to person or property, or a deprivation of a constitutionally protected right.

Parker v. Landry, 935 F.3d 9, 17–18 (1st Cir. 2019) (alterations in original) (quoting Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)). To satisfy the first two elements, the plaintiff "must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of her civil rights." Id. at 18. The alleged agreement "must involve 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); see also Aulson v. Blanchard, 83 F.3d 1, 4 (1st Cir. 1996) ("[P]laintiffs must allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious."). In the absence of direct evidence of such an agreement, the plaintiff "must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." Parker, 935 F.3d at 18.

Here, although the issue is close, Plaintiff has plausibly alleged that the Arresting Officers, but not any of the other Defendants, conspired to deprive her of her First Amendment rights because she is Black. Although the claims section of the Amended Complaint, [AC ¶¶ 109–13], is wholly conclusory, Plaintiff alleges that she was "one of the few people of color present for the gathering" and that the only other protester who was arrested was also "a person of color," [id. ¶ 21]. She further alleges that, on the day of her arrest, "about a dozen Lowell police officers" acted in coordination, [id. ¶ 19], including the Arresting Officers who "walked

26

directly to [her], passing several dozen others on their way to her location," [id. ¶ 20]. These allegations, viewed in the light most favorable to Plaintiff, support the reasonable inference that the Arresting Officers conspired to deprive Plaintiff of the equal protection of the laws by retaliating against her for engaging in activity protected by the First Amendment. Plaintiff has not plausibly alleged, however, that any of the other Defendants took any race-based actions against her. Accordingly, the Original Defendants' motion to dismiss Count 18 is **GRANTED IN PART** and **DENIED IN PART** in that Plaintiff's claim may proceed against Fay, but not Gendreau or Crawford. The City Official Defendants' motion to dismiss Count 18 is **GRANTED**.

### H.    Common Law Conspiracy (Counts 19 and 20)

Plaintiff asserts claims of coercive common law conspiracy (Count 19) and joint liability common law conspiracy (Count 20) against the Defendants. [AC ¶¶ 115, 117–18].

"Massachusetts law recognizes two distinct theories of liability under the umbrella term of 'civil conspiracy': 'concerted action' conspiracy . . . and 'true conspiracy' based on coconspirators exerting 'some "peculiar power of coercion."'" Greene v. Philip Morris USA Inc., 208 N.E.3d 676, 682 (Mass. 2023) (first citing Gurney v. Tenney, 85 N.E. 428, 430 (Mass. 1908); and then quoting Fleming v. Dane, 22 N.E.2d 609, 611 (Mass. 1939)). The Court interprets Plaintiff's claim of coercive common law conspiracy as a claim of "true" conspiracy and her claim of joint liability common law conspiracy as a claim of "concerted action" conspiracy.

True or coercive conspiracy is "a rare cause of action," Anoush Cab, Inc. v. Uber Techs., Inc., 8 F.4th 1, 24 (1st Cir. 2021), and "seems to have been applied principally to remedy direct economic coercion," Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp.

2d 236, 244 (D. Mass. 1999); see also Snyder v. Collura, 812 F.3d 46, 52 (1st Cir. 2016) (providing "[c]ollusive behavior among market competitors" as a "good example of one of the rare instances" of the tort). The "'wrong' suffered by the plaintiff is 'in the particular combination of the defendants rather than in the tortious nature of the underlying conduct.'" Snyder, 812 F.3d at 52 (quoting Kurker v. Hill, 689 N.E.2d 833, 836 (Mass. App. Ct. 1998)). To state a claim for true conspiracy, a plaintiff must allege that "by 'mere force of numbers acting in unison' the defendants exercised 'some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had.'" Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 244 (quoting Fleming v. Dane, 22 N.E.2d 609, 611 (Mass. 1939)).

Here, Plaintiff does not plead any facts that demonstrate that Defendants exercised a "peculiar power of coercion" of the type contemplated by the case law. See, e.g., Daly v. Mason, 752 F. Supp. 3d 346, 368 (D. Mass. 2024); Echavarria v. Roach, 565 F. Supp. 3d 51, 99 (D. Mass. 2021). Accordingly, the Original Defendants' and City Official Defendants' motions to dismiss Count 19 are **GRANTED**.

Concerted-action conspiracy imposes "liability . . . on one individual for the tort of another." Thomas v. Harrington, 909 F.3d 483, 490 (1st Cir. 2018) (quoting Kurker, 689 N.E.2d at 836). To state a claim for concerted-action conspiracy, a plaintiff must plausibly allege that the "defendants either (1) acted 'in concert with or pursuant to a common design with the' tortfeasor or (2) 'gave substantial assistance to' the tortfeasor's conduct." Id. (quoting Kyte v. Philip Morris Inc., 556 N.E.2d 1025, 1027 (Mass. 1990)).

Here, Plaintiff has plausibly alleged that the Arresting Defendants and Crawford, but not any other Defendant, either acted in concert with the other tortfeasors or gave substantial

assistance to them.  According to the Amended Complaint, the Arresting Defendants "traveled straight to [Plaintiff's] location and immediately placed her in handcuffs," [AC ¶ 4], and Crawford and Fay jointly "drafted, approved, and submitted" the arrest report and application for a criminal complaint that led to Plaintiff's prosecution, [id. ¶ 11].  Viewed in the light most favorable to Plaintiff, these allegations permit the reasonable inference that there existed an express or implied agreement among the Arresting Defendants and Crawford and that their alleged tortious acts were in furtherance of that agreement; it is also plausible that these defendants knowingly and intentionally provided substantial assistance or encouragement to the other alleged tortfeasors.  The same cannot be said for the City Official Defendants, who, based on the Amended Complaint, merely provided or received updates as to Plaintiff's protest plans, [id. ¶¶ 27, 29, 39], which does not permit the inference of an agreement to, or substantial assistance in, any underlying tort.  Nor do the pleaded facts permit such an inference as to Gendreau, whose testimony against Plaintiff, [id. ¶ 43], was not "a substantial factor in causing" any underlying tort, Thomas, 909 F.3d at 491 (quoting Taylor v. Am. Chemistry Council, 576 F.3d 16, 35 (1st Cir. 2009)).  Accordingly, the Original Defendants' motion to dismiss Count 20 is **GRANTED IN PART** and **DENIED IN PART** in that Plaintiff's claim may proceed against Fay, but not Gendreau or Crawford, and the City Official Defendants' motion to dismiss Count 20 is **GRANTED**.

### I.    Equal Protection Violation (Count 21)

Plaintiff asserts that the Defendants "intentionally treat[ed] [Plaintiff] differently than similarly situated individuals," [AC ¶ 122], due to her "status as an African American woman," [id. ¶ 120], in violation of the Equal Protection Clause of the Fourteenth Amendment.

"To prevail on a claim of racial discrimination in violation of the Equal Protection Clause, at least in the absence of direct proof that racial animus caused the adverse action, a plaintiff must establish (1) that he was selected for adverse treatment compared with others similarly situated, and (2) that the selection for adverse treatment was based on an impermissible consideration, such as his race." Fincher v. Town of Brookline, 26 F.4th 479, 486 (1st Cir. 2022); see also Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 105–06 (1st Cir. 2015) ("Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that 'compared with others similarly situated, [the plaintiff was] selectively treated . . . based on impermissible considerations such as race . . . .'" (first and second alterations in original) (quoting Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001))). "To survive a motion to dismiss, an equal protection claim 'must "outline facts sufficient to convey specific instances of unlawful discrimination."'" Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990)). "A plaintiff 'may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus.'" Id. (quoting Correa-Martinez, 903 F.2d at 53).

Here, as discussed supra, Plaintiff has plausibly alleged that the Arresting Officers singled her out for arrest based on race, arresting only Plaintiff and another person of color, "even though her behavior was no different than anyone else around her." [AC ¶ 21]. Plaintiff's boilerplate allegation, however, that all other Defendants "intentionally treat[ed] [her] differently than similarly situated individuals outside of her protected class," [id. ¶ 121], is not supported by sufficient facts to state an equal protection claim against those Defendants. Coyne, 972 F.2d at 444. Accordingly, the Original Defendants' motion to dismiss Count 21 is **GRANTED IN**

**PART** and **DENIED IN PART** in that Plaintiff's claim may proceed against Fay, but not Crawford or Gendreau, and the City Official Defendants' motion to dismiss Count 21 is **GRANTED**.

**IV.    CONCLUSION**

For the reasons set forth above, the City Official Defendants' motion to dismiss, [ECF No. 31], is **GRANTED** in full.  The Original Defendants' motion to dismiss, [ECF No. 27], is **GRANTED IN PART**, as follows:  Counts 2, 4, 7, 10, 12, 13, 15, 16, 17, and 19 are dismissed in full; all claims against Gendreau are dismissed; and Counts 18 and 21 are dismissed as to Crawford.  The Original Defendants' motion is otherwise **DENIED**, meaning that the following claims may proceed:  Counts 1, 5, 6, 8, 9, 18, 20, and 21 against Fay alone and Counts 3, 11, 14 against both Crawford and Fay.

**SO ORDERED.**

December 19, 2025                                         */s/ Allison D. Burroughs*
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE

31